The Honorable United States Court of Appeals for the First Circuit is now in session. All parties having any business before this Honorable Court later on in the year, give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Good morning. Please be seated. Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is number 161035, United States v. José Padilla-Galarza. Good morning, Your Honor. Lynn Marglazer for Mr. Padilla-Galarza. With your permission, I would reserve three minutes for rebuttal, if that's agreed. What I would like to do first is clarify the facts that led to Mr. Galarza representing himself in his trial. The government, on page 9 of their brief, quotes the question whether Mr. Padilla-Galarza would prefer to have Carlos Vazquez as his attorney or represent himself, to which he said he would represent himself. The government takes that out of context, and I want to explain that context to you. Sixteen times in the record, Mr. Padilla-Galarza requested an attorney that was free of conflict and that would be effective. He had three attorneys. In this case, he was appointed, first he was appointed John Connors when he was first arrested. Ten days after that, John Connors, the attorney, filed a motion saying that he needed to withdraw because he was conflicted that he would be representing witnesses in this case. Anita Hill was then assigned to the case. The first time that Mr. Padilla-Galarza has an opportunity to talk to the court on July 7th, he asks that Anita Hill be removed from the case and that he has another attorney appointed. The court denies that and instead gives him John Connors, the attorney who was previously conflicted out, and Ms. Hill. Then what happens is on August 4th, this is docket number 72, docketed a motion that had been previously filed but apparently not docketed, according to the government's note, where he makes a pro se motion in response and says, if denied the request for a new counsel, the defendant will be left with no other option than to be railroaded into representing himself against his will. The court holds a hearing on August 5th, questions if he wants to represent himself, and he's very clear he does not want to represent himself, but he doesn't want these two attorneys. He says he wants effective legal counsel free of conflict, and he assures the court he's not asking for any particular lawyer, but he wants a lawyer who meets that constitutional standard. He says it on, this is on the transcript for August 5th, he says it on page 7, he repeats it again on page 8, he repeats it again on page 9, the court denies this but adds Carlos Vasquez as a third attorney to represent him along with the others. Mr. Padilla-Galarza, again on page 17 and 19, 21 and 24, tells the court he would be satisfied with Carlos Vasquez alone, but he does not want these other two who he doesn't trust and who have conflicts. But there's a difference between him saying he doesn't trust someone and us making a finding that they had a conflict that would render their representation unconstitutional on Ms. Hill. What is the conflict that Ms. Hill had that would inexorably lead to the conclusion that having her represent him would be an unconstitutional violation? He discusses in open court his theory of the defense in this case. It's a possession case where marijuana and bullets were found in a house, and the dispute is whether he had knowledge of it and whether it was his actual residence. Ms. Hill was not going on that theory of the case and had not even done the minimum that he had requested in the beginning of the case, which was to subpoena the records of the licenses of his father's firearms. The house he and his siblings inherited, and the house had been his father's, and his theory was that, indeed, the bullets were found there because the house was a total mess. The words that he used in his request were that they did not see eye to eye, that she was not proceeding in terms of the defense that he felt was the truth that he needed to present at trial. So if I hear you correctly, I didn't hear the word conflict in there at all. You're not claiming that Ms. Hill had a conflict? In the sense of having a conflict because of other cases, I don't believe that was the case. Well, in any sense, she had no conflict at all. I think what you're saying is she had a different, he didn't view her as an adequate lawyer. She was, in his view and in his words, she was ineffective. There was a breakdown of communication. Okay, let's take that then. What do you advocate to us as the standard should be when a defendant simply asserts that someone is ineffective, explains why he thinks she's ineffective, and the district court disagrees that that means counsel is ineffective? It's common all the time to have a defendant have some different theories about how counsel should be conducting themselves. What do you point to that would lead us to conclude that there was an error that is reversible in deciding that Ms. Hill could proceed as counsel? Well, it's certainly the first request of him in this case. You must agree a request isn't enough. The mere fact he makes a request. But the court's remedy also exaggerates the problem because the judge then adds Connors, who by his own word has a conflict. And I believe where the defendant has the right to have his theory of defense, what his truth is, represented, where the attorney that's representing him is not proceeding with that, that's certainly a breakdown in communication that represents, if not a conflict of interest, certainly the inability of that attorney to provide zealous representation, which has to be the standard because that's the constitutional standard. Just so I understand, if you're right about that, what is the significance of the fact that he ultimately offers, if I'm understanding it right, to have this other counsel? Vazquez with the 20 days. He doesn't offer him Vazquez as trial attorney. Right. Mr. Padilla-DeLarza five times has said he would be happy to have Carlos Vazquez as his solo attorney. The court rigidly determines that the choices for Mr. Padilla-DeLarza. No, I understand, but what I'm saying is I'm not understanding the relationship between your point about attorney hell and the objection you're making. Is the objection you're now making that the error was in not appointing Vazquez as opposed to simply having Vazquez as standby counsel? The court's response to Mr. Padilla-DeLarza, first, was to appoint a second attorney who already had said he was conflicted. And then when the client repeated it. Let's say I agree with you in that he had a right not to have hell be his counsel. Okay. What's the remedy for that? One possibility he gets to proceed pro se, another possibility he gets a new counsel appointed. Those are the two possibilities, right, for remedying it. The third possibility is what the court offered. The court never offered that Carlos Vazquez would be the trial attorney. I'm just saying logically, if you're right about hell, there needs to be a remedy for it. What would you want to have had done? The court should have continued the case that Carlos Vazquez said. He could be ready for the case. So the real thing you're objecting to is that it wasn't a long enough continuance. Is that right? Exactly. So what do you show to show that you were prejudiced by the length of continuance that was granted, which was 20 days? The length of continuance prevented Mr. Vazquez from representing Padilla del Arce. Now, I know you assert that. I'm saying what in the record would support the conclusion that if he had had a longer period of time, that you were prejudiced by only having the 20 days? That's what I guess, because that's in the end, that's the challenge? Well, the court in the August 7th, page 5 and page 6 of the August 7th transcript, the court, after a whole dialogue where Mr. Padilla del Arce repeats his desire to have an attorney, he asks Mr. Vazquez if he can be ready in two days. Mr. Vazquez says no. And then he says, can you be ready in five days? And Mr. Vazquez says, no, I'm stepping into the case now. And the judge says, well, then it's impossible because it's a speedy trial issue and it can't be waived, which was incorrect by matter of law since U.S. v. Aposelli, the rules itself. But in the end, there was a 20-day continuance, right? There was a 15-day continuance. So you have to show you were prejudiced by that, right? Well, the prejudice is that Mr. Vazquez himself said he could not represent Mr. Padilla del Arce as an attorney with that little amount of time. On the 15 days? On the 15 days. He said at a minimum he would need one to two months. The court never then proceeded to... I get that, but what I'm not following, is your contention that he was entitled to have Vazquez appointed to be his counsel? He should have been entitled to have a new counsel. Vazquez would have been appropriate. The court had already determined Vazquez would be... And so simply allowing him to proceed pro se would not be a sufficient remedy? Well, it deprives him of his opportunity to have effective counsel. And that's his basic Sixth Amendment right. He, as I said, 25... So the argument is all the other counsels, he had a legitimate reason for not having them. This is his first request. John Connors himself... Pulled out. Pulled out his... You say he had a right not to have Hill because you say there was a breakdown in communication. Completely, and the argument in effect is... And that would have been Vazquez, but he was denied it because the judge was too strict in the timeline. Therefore, Vazquez said, I can't be his counsel. Exactly. Okay, and so when the defendant says, I'm okay with him being standby, you're saying we shouldn't treat that as a concession. Because at that point, he had no other opportunity. Exactly. The choices at that point for Mr. Padilla-Galarza were... You have three of these attorneys, or you go on your own with Mr. Padilla... Excuse me, with Mr. Vazquez as standby counsel. That's the choices that were before him. Thank you. Good morning. May it please the court. Juliana Guineattis for the United States. Now, the district court properly exercised its discretion in granting a 15-day continuance and allowing the defendant to proceed pro se with the assistance of standby counsel as suggested by the defendant himself. And before I get into the meat and bones of this argument, I feel the necessity to clarify an issue that I believe is different in the record. At the August 7th hearing, which was requested by the government after reading Mr. Padilla's pro se motion, where he stated that if he had all three attorneys, he would be railroaded into proceeding pro se, the government requested a hearing so that the record would be complete. And ultimately, at that hearing, the idea of all three attorneys was put aside. And the court asked Mr. Vazquez how much time he needed to be able to effectively prepare. Mr. Vazquez said one to two months. And then the court specifically, on page 8, asked him, Mr. Vazquez, could you be ready in 20 days? Mr. Vazquez said, yes, I will. Then the court, asking the defendant, said we have two things here. And this is on page 9 of that same transcript. If I give you 20 days, he has the option of either using you as his lawyer, option A, or option B, representing himself pro se. It's at this moment that Padilla actually suggests to the court, he says, I have no problem with Attorney Vazquez as standby, where he says that he'd rather represent himself pro se, but with Attorney Vazquez as standby. So at this very moment, the option of the three attorneys was off the table, because the court provided the defendant with two options, Mr. Vazquez being his primary counsel with 20 days, or Padilla representing himself pro se with standby counsel Vazquez. Am I right that the record says that Vazquez said that 20 days was sufficient? Yes, Your Honor. On the page before, on page 8 of docket entry 145, Mr. Vazquez, could you be ready in 20 days? Mr. Vazquez responds, yes, I will. So at that point, the court had offered the defendant two options, Vazquez 20 days, or you pro se. And he asked him twice in that hearing, do you still prefer to represent yourself? And he said, with standby counsel, yes. So at that point, Padilla, knowing that he had the option to have Mr. Vazquez as his primary counsel, nonetheless chose to proceed pro se with standby counsel. So he was not given this option of three attorneys I don't trust, or myself. He was given two options, and two options which were both desirable to him, but ultimately chose to proceed pro se. Furthermore, throughout all of these hearings, and throughout the trial, it became patently clear what Mr. Padilla's strategy of his defense was, that this was not my primary residence, it was a mess, it was my father's, I had no idea what was in there. And he's talked about how he wanted to subpoena his father's firearm licenses to present that to the jury. Ultimately, to determine whether there was an abuse of discretion, he needs to show that he was prejudiced. And here, Mr. Padilla has not showed any specific way, he has not pointed to any pivotal evidence that he would present, or any type of strategy that would have ultimately changed the outcome of this case. Given that, it cannot be shown that here the district court exhibited an unreasonable or arbitrary insistence on expeditiousness in the face of a justifiable request for delay. The court was very patient throughout all of these proceedings, ultimately giving him exactly what he wanted and offering him third counsel, second counsel since Mr. Connors had requested to withdraw. So under these circumstances, he cannot show that there was any abuse of discretion or that it resulted in prejudice such that a new trial was warranted. Now, if your honors have no further questions, would you like me to touch the other issues in the brief? Well, there's only one question. I assume the government agrees that one of the conditions of supervised release is inappropriate, the one about child pornography. Yes, your honor. As stated in our brief, we have no objection to a limited remand so that the district court can excise that condition, given that it appears to be from a completely unrelated case. This case has nothing to do with child pornography nor with 2253, which is the statute that was mentioned here. If I may, just with one more minute, rereading the transcripts to go to whether the issue of whether the government plainly erred in its closing statement by referring to the defendant as a convict, I just want to bring to the court's attention also that that was a completely proper argument on the behalf of the government. When we look at Mr. Padilla's closing argument on behalf of himself, again, he went with that same strategy that, I didn't know this was happening, these were my father's guns. And prior to closing his closing argument, he talked to the jury and told them to be very careful because this could happen to you. There is a marshal here that has a gun, and if he were to die, his family members may find bullets, and this could happen to you. How does him being a felon make it more probable than not that he would recognize a gun or recognize narcotics? It doesn't, Your Honor. The reason, if I may, the reason the government mentioned that was he stated to the jury, this could happen to you, this could happen to anybody. And they were not prohibited persons. The reason why it was happening to Mr. Padilla Galeza was because he was a felon. That was the reason why it could not happen to the members of the juries unless they were to have a felony conviction. It's one thing to point out that the conviction is an element of this crime, so therefore someone who lacks that element can't be guilty of the crime. But didn't the prosecutor in closing seem to go beyond that and also make the statement that because he was a former police officer and because he was a felon, he was more likely to be aware of there being ammunition and drugs in the house? Your Honor, I would agree partially with what you said, that because he was a police officer, because of his professional background, he has had access to firearms. I'm unaware of any police officer that doesn't have basic firearm training. But that at any point did the government equate his status as an ex-convict as making or asking the jury to infer that he was guilty of the crime committed? No, that can be found nowhere in the record. And that would be impermissible as the district court mentioned that on various occasions in the preliminary instructions and in the closing instructions. What it was that the government was saying and rebutting was the fact that he said that it could happen to the jury. It could happen to you guys. The only reason that he was there was because of the convict status. Because clearly, possessing ammunition is not the offense here. It's the prohibited person that possessed the ammunition. So the reference to that was in responding to the argument. And yes, because that was the element of the offense that makes that a crime. Whereas if someone were to find a bullet in their house, he was giving the jury the false sense that they could therefore be on the hook for federal crime. The reason that he was on the hook for the federal crime was that element that he's a prohibited person. And when the government was talking about knowledge, it was talking about knowledge partially because of his profession, the fact that he was an individual. And that was clearly demonstrated to the jury by the ability that he was able to cross-examine the firearm experts. He talked freely about the different types of calibers and cartridges that were found. So the jury was able to witness that firsthand. And when we look at this record... Yes, John? This is the passage. It says, this case is about an ex-PRPD officer, convicted felon, a person that has law enforcement background. This is not a case about a grandmother, naive, that had never seen any type of narcotics or was never confronted and had no participation in narcotics. So no participation in narcotics is that... I guess I'm just trying to follow. The idea is that when they say, this case is about an ex-PRPD officer, convicted felon, a person that has law enforcement background, isn't it the natural reading of it that those aspects of his life make him somebody with participation in narcotics? As a police officer, Your Honor. It is very likely that as a police officer in Puerto Rico, he would have more knowledge of narcotics than a grandmother. And I think it's very important that we look... Right now we're looking at a cold appellate record. So what's the point of throwing in there that he's a convicted felon? Because two pages before in that transcript, Your Honor, when he said, as I said before... This passage doesn't seem to be about... The passage I'm just reading, it just says, this case is about an ex-PRPD officer, convicted felon, a person that has law enforcement background. This is not a case about a grandmother, naive, that had never seen any type of narcotics. It seems hard to read the reference to felon there as being a reference to the two pages before as opposed to setting up the next sentence, which is, we're not dealing with somebody who wouldn't know about narcotics. And part of the case that's being made about why you would know about narcotics seems to be not just that he was a police officer, but that he was a convicted felon. And that seems problematic, doesn't it? Your Honor, it is the government's contention that it was clearly a response to his that it could happen to anybody, they're going to have bullets around, it could happen to anybody. It could happen to... The government was saying, in sum, it was the response to the two main arguments. But I'm just saying the passage I just read has nothing to do with that. Well, I'm saying that that was the summation of... This is why it can't happen to everybody because he is a convict. And, Your Honor, even if we were for the sake of argument to assume that this was improper, where the government's position is that it's not, when you look at the cold record versus at the time of the closing arguments, there were two individuals there. Mr. Vasquez was there. No one ever objected. So the inflection, it's our position that the inflection... And to put it aside, Mr. Vasquez had objected during the trial. So he was not a passive standby counsel. There were objections lodged on the record that it was clearly in response to that argument. And in any event, he would have to show that this so poisoned the well and that there was plain error. And considering the... It's the government's argument is this is not an error that was plain, nor can he show prejudice or that it infected the integrity of the judicial proceedings, that it so poisoned the well that a new trial is warranted when everybody that was there in the courtroom, nobody saw an issue with it, when the district court in its closing arguments hammered away the fact that his conviction is only an element of the offense and it would be improper for the jury to infer because he was convicted in the past that indeed he had committed this. And since juries are presumed to follow the instructions, given the record as a whole here, it's our contention that he has failed to establish the heavy burden of plain error. I just wanted to clear that issue because indeed he had mentioned that it could happen to anybody and Mr. Galarza was not anybody. He was a prohibited person and for that reason the government responded in the manner that it did. And if there's no further questions from this panel, I would rest on my brief. I would like to address still the issue we've been talking about in the 20 days. And it's very important, the government points to page 8 of the transcript where the 20 days is asked and Mr. Vasquez says yes, but then at the bottom of that page he says, I'll be ready if, in the way that I'm seeing this, I'm going to be seen by counsel. Never does he say, I'll be ready to be the trial attorney and I believe that's why, as I said, the following request of the court of do you want attorneys, meaning the three, or Vasquez as your standby counsel, leaves him with no other choice. Briefly, the one other issue which the government in its brief distinguishes, I think incorrectly, Commonwealth v. Lee, which is the case of the right to testify. All that should have happened in this case at the end of the government's case, if Judge Fuste had simply said, do you wish to testify, a yes or no, that would have been it. No one is suggesting iconically. What the court did instead is say to, is ask Mr. Pena Garza if he has evidence. And he says, based, we argue, in all the times that he tried to testify or tried to put in facts in the record and was told he couldn't, that was testimony, where he responds, no, it would just be denied, suggests that he viewed that opportunity as being lost, that he didn't have the opportunity in narrative or any other form to put his own facts on the record. What do we make of the fact that he had standby counsel? Well, he had standby counsel, which isn't the same as being represented by counsel. No, it's not the same as being pro se either. True. So what do we make of it? Well, but there's nothing on the record that would suggest that standby counsel provided him with the depth of understanding of what his options were on that matter. And the government has argued, well, he was a police officer, well, he would know better. But he says in the record that his experience with court was administrative proceedings, which, at least in my experience, are pretty informal proceedings. So there's nothing that suggests that he knew that by having been denied all these times previously, that he could now take the stand on his own. Thank you.